*In re* MARRIAGE OF WILLIAM T. CLABAULT, Petitioner-Appellee, and
SUSAN R. CLABAULT, Respondent-Appellant.

Second District   No. 2—92—0711

Opinion filed July 1, 1993.—Rehearing denied September 23, 1993.

Susan Clabault, of Wheaton, appellant *pro se.*

Harold G. Field, of Harold G. Field & Associates, of Wheaton, for appellee.

JUSTICE QUETSCH delivered the opinion of the court:

Respondent, Susan Clabault, appeals from the trial court's order granting the dissolution of her marriage to petitioner, William T. Clabault. Respondent contends the trial court erred in: (1) the apportionment of petitioner's pension benefits; (2) ordering the sale of the marital home; (3) awarding the 1991 tax exemption for the parties' son, Edward, to petitioner; (4) awarding respondent's 1991 tax refund of $1,250 to petitioner; (5) failing to award respondent the statutory minimum amount of child support; and (6) failing to award respondent sufficient maintenance. We affirm in part, vacate in part and remand the cause for further proceedings.

The parties were married on August 22, 1970, and had three children during the course of their marriage: Kathryn, Edward and Jonathan. At the time of dissolution on February 14, 1992, Kathryn was emancipated, Edward was in his last year of high school and was

scheduled to graduate in June 1992, and Jonathan was in his second year of high school. Kathryn resides with petitioner and Edward and Jonathan reside with respondent.

At the time of dissolution, respondent was 50 years old and petitioner was 46 years old. In 1990, petitioner began working as a trial attorney with the Department of Justice in Washington, D.C., earning $83,306 per year. Prior to that time, he had been employed as an assistant United States Attorney in the Northern District of Illinois. He has worked continuously as a lawyer since the parties married in 1970.

Respondent was employed as a teacher at the time the parties married. She stopped working outside the home two months before the birth of their first child, Kathryn, in 1971. She did not work outside the home again until 1987-88 when she occasionally worked as a substitute teacher. In August 1989, respondent began working full-time as a kindergarten teacher. She received good reviews in her first year of teaching. However, after the school appointed a new principal, respondent did not receive a good rating.

Respondent testified that during 1990-91 she was under so much stress she could not function. In spite of an outpouring of support from the parents of her students, respondent's contract was not renewed for the 1991-92 school year. She filed a claim against the school with the Illinois Human Rights Commission, but was unable to regain her position with the school. At the time of trial she was unemployed and receiving therapy and medication for severe depression. However, expert testimony revealed a good prognosis for respondent's recovery provided she continue therapy.

In its order of dissolution, the court granted custody of Edward and Jonathan to respondent and ordered petitioner to pay $1,100 per month in child support until Edward graduated from high school on June 13, 1992, at which time support payments dropped to $880 per month. In addition, the court ordered petitioner to pay $880 per month in rehabilitative maintenance. The parties agreed that the value of the equity in the marital home was $123,600. The court ordered the home be sold and awarded 60% of the proceeds to respondent and 40% of the proceeds to petitioner. The court initially valued petitioner's pension at $83,205 and awarded respondent an amount equal to 50% of the monthly pension benefits based on the benefits accrued during the course of their marriage.

Respondent filed a post-trial motion requesting the reopening of proofs regarding the value of petitioner's pension benefits based on "newly discovered evidence" which respondent alleged revealed the

value of the pension benefits accrued to be higher than initially determined. She also requested the modification of other portions of the judgment. Petitioner filed a "motion to clarify the judgment" requesting the court conform the wording of its order regarding the apportionment of the pension benefits to the format suggested in the Federal register. The court denied the motion to reopen proofs and granted the motion to clarify the judgment. Respondent timely appeals.

Respondent contends a new trial should be granted regarding the apportionment of petitioner's pension benefits. Respondent argues the trial court erred in valuing the pension as of a date more than eight months prior to trial, in disregarding the testimony of respondent's actuarial expert, in refusing to reopen proofs regarding "newly discovered" evidence relating to the value of the pension plan, and in "clarifying" its judgment thereby reducing respondent's portion of the benefits. These arguments reveal a fundamental misunderstanding of what transpired at the trial level.

Retirement benefits earned during a marriage in the form of pensions and profit sharing interests are designated marital property. (*In re Marriage of Davis* (1991), 215 Ill. App. 3d 763, 773.) We note the difficulty in attempting to present evidence of the value of something that, under actuarial methods, is difficult to determine within a reasonable degree of certainty. (See *Robinson v. Robinson* (1986), 146 Ill. App. 3d 474, 476.) Because the valuation of such benefits is so problematic, Illinois courts have developed two methods to apportion pension benefits upon dissolution.

■ The first method is known as the "immediate offset" approach under which a trial court may, upon the determination of the present value of the pension benefits, award the value of the benefit to the employee spouse and offset that award with other marital property of similar value. (*Robinson v. Robinson* (1986), 146 Ill. App. 3d 474, 476; see also *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 663.) This method is best used when there is sufficient actuarial evidence to determine the present value of the benefits, when the employee spouse is close to retirement age, and when there is sufficient marital property to allow an offset. *Robinson*, 146 Ill. App. 3d at 476.

The second method is known as the "reserved jurisdiction" approach. Under this approach, the court orders the employee spouse to pay an allocated portion of the pension fund to the former spouse, as it is disbursed, while retaining jurisdiction to enforce the decree. (*Robinson*, 146 Ill. App. 3d at 476; *In re Marriage of Korper* (1985), 131 Ill. App. 3d 753, 759-60.) Applying this method in apportioning

benefits accrued during the marriage helps alleviate the inequities inherent in being unable to determine the present value of benefits which are dependent upon future events.

Although the trial court assigned a present value to the pension plan in this case, it used the reserved jurisdiction approach to determine the proper apportionment of benefits. Therefore, respondent's arguments regarding the valuation of the benefits are irrelevant because the valuation of benefits at the time of dissolution was not involved in the court's apportionment of benefits under the reserved jurisdiction approach. In the case at bar, the trial court awarded respondent 50% of the petitioner's future benefits based on the number of years the parties were married. It used the following formula:

$$\frac{15 \text{ (number of years of service accrued during marriage)}}{\text{Total years of service}} \times \text{monthly pension} \times 50 \text{ percent}$$

Accordingly, the present estimated value of the pension plan was irrelevant.

However, because the number of years of service accrued under petitioner's pension plan was uncertain as of the trial date due to the fact petitioner left the employ of the Federal government for a period of time early in his career, the court included a second formula in its order. At the time of trial, both parties believed petitioner had the option of redepositing the retirement funds he had withdrawn when he left the government's employ to receive credit for those years of service. If petitioner chose to redeposit the funds, he would be given credit for an additional 3 years and 10 months of service toward his pension. The second formula was to be utilized if petitioner exercised this option. The formula was as follows:

$$\frac{15 \text{ (number of years of service accrued during marriage) plus number of years of service repurchased}}{\text{Total years of service}} \times \text{monthly pension} \times 50 \text{ percent}$$

Petitioner was later informed it was not necessary for him to redeposit the withdrawn funds in order to receive credit for the total number of years he was in service to the government. Thus, the num-

ber of years of petitioner's service accrued during the course of the parties' marriage could be fixed at 18 years, 10 months, rather than 15 years, plus the number of years repurchased, if any, if petitioner exercised the option to repurchase. Petitioner notified respondent of this information on March 7, 1992.

Respondent filed a motion for a new trial based on what she termed the "newly discovered" evidence regarding the present estimated value of the pension benefits. Respondent argued that because the number of years of service could be fixed at 18 years, 10 months, rather than the 15 years used in the court's original formula, the estimated present value of the benefits was larger than originally determined at trial. Petitioner filed a motion to clarify the judgment requesting the court change the format of its order to that preferred by the Federal government. The trial court denied respondent's motion for a new trial and clarified its previous judgment order by striking the paragraph regarding the apportionment of the pension benefits and replacing it with the following language:

> "Susan has never qualified for any pension. Due to her medical condition, the [c]ourt cannot determine if in fact she will ever qualify for her own pension. If petitioner, William T. Clabault, will be eligible for retirement benefits under the Civil Service Retirement System based on his employment with the United States Government from an adjusted service computation date of April 30, 1973, the respondent, Susan R. Clabault, is entitled to a share of William's gross monthly annuity under the Civil Service Retirement System to be computed as follows:
>
> > .169584 (16.9584 [percent]) of the average of William's high three years of salary as determined by the United States Office of Personnel Management upon William's retirement from the United States Government, or, if he leaves the Government before retirement, upon the date he is eligible to receive full retirement benefits under the Civil Service Retirement System ***."

On appeal, respondent contends the trial court erred in clarifying its judgment and reducing her portion of the pension benefits from 50% to 17%. She also argues the trial court should not have considered the proposed rules of the United States' Office of Personnel Management, which administers the Civil Service Retirement System, tendered by petitioner at the post-trial hearing because she argues both exhibits constitute "new evidence." The proposed rules suggest a format for use in court orders pertaining to the apportionment of pension benefits under the Federal pension plan. Because respondent

failed to object to these exhibits at the time of the hearing, this argument is waived. However, after reviewing the language of the order, we conclude respondent's argument that the trial court erred in clarifying its order regarding the apportionment of benefits is correct in part.

The record reveals petitioner's pension benefits at the time of retirement are determined based on the number of years of service and the average of petitioner's three highest years' salary. If petitioner retired after 18 years, 10 months of service, he would receive .339167% or 33.9167% of the average of his three highest years' salary. Thus, in clarifying its order, the trial court attempted to conform the language of its prior determination that respondent is to receive one-half of petitioner's pension benefits accrued during the course of the marriage to the recommended language of the United States' Office of Personnel Management by stating respondent is to receive 16.9584% of the average of petitioner's three highest years' salary. This percentage represents one-half of the benefits petitioner would receive if he were to retire after 18 years, 10 months of service. However, in changing the format of its order, the trial court failed to include the formula upon which its determination of the percentage to be awarded to respondent was based, as called for by the United States' Office of Personnel Management.

In its modified order, the court stated that respondent was to receive .169584% or 16.9584% of petitioner's three highest years' salary upon petitioner's retirement from the government, or if he leaves the government's employ before retirement, upon the date he is to receive full retirement benefits, *i.e.*, a lump sum payment of benefits. However, 16.9584% of petitioner's three highest years' salary at the time petitioner retires will be more than 16.9584% of his three highest years' salary at the time of dissolution assuming petitioner's salary will increase over time, thus increasing respondent's portion of the benefits. Moreover, 16.9584% of a lump sum payment upon petitioner's early departure grossly decreases respondent's portion of the benefits.

■ Although the trial court attempted to follow the suggested format of the United States' Office of Personnel Management (57 Fed. Reg. 141 (1992)), it failed to include the formula upon which its judgment was based. This creates a problem because, although respondent is entitled to receive 16.9584% of petitioner's three highest years' salary at the time of dissolution, petitioner's benefits will be determined based on his three highest years' salary at the time of retirement. No mention was made of the term of years for which the

parties were married while petitioner accrued benefits which is vital to the apportionment of benefits because petitioner will continue to accrue benefits throughout the years.

Because it does not appear from the record the trial court intended this result, we vacate the portion of the trial court's May 19, 1992, order pertaining to the apportionment of pension benefits, and we remand the cause for further proceedings consistent with this opinion. The trial court should incorporate the formula used in its initial judgment order into the format preferred by the Federal government as provided in section 211 of the proposed rules of the United States' Office of Personnel Management (57 Fed. Reg. 141 (1992)), as follows:

$$\frac{18 \text{ years, } 10 \text{ months}}{\text{Total years of service}} \times \text{monthly benefits} \times 50 \text{ percent.}$$

In the alternative, upon finding sufficient evidence of present value, as well as other relevant factors, the court may employ the offset method based on 16.9584% of petitioner's three highest years' salary at the time of dissolution.

Respondent's next argument on appeal is that the trial court erred in its distribution of the marital property. First, respondent contends the trial court erred in ordering the sale of the marital home. Respondent argues she needs the home to maintain stability for her two sons and for herself in her depressed state. She contends the court should have awarded her exclusive possession of the home until the parties' youngest child finishes high school and she recovers from her severe depression.

Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Act) requires a trial court to divide the marital property in just proportions, taking into consideration 11 numerated factors. (Ill. Rev. Stat. 1991, ch. 40, par. 503(d).) The trial court's distribution of property rests within its sound discretion and will not be disturbed on appeal absent an abuse of that discretion. (*In re Marriage of Agazim* (1988), 176 Ill. App. 3d 225, 231.) Such an abuse of discretion occurs only where no reasonable person would take the view adopted by the trial court. (*In re Marriage of Los* (1985), 136 Ill. App. 3d 26, 30.) Here, the trial court ordered the marital home be sold and the net proceeds be distributed 60% to respondent and 40% to the petitioner. The parties stipulated at trial the value of the equity in the home was $123,600.

The record on appeal reveals the following. Respondent requested that she be awarded the marital residence. She testified that she is unable to keep current on her bills while receiving $1,500 per month. Respondent is short approximately $10,000 in meeting expenses since the separation. Moreover, the treatment of respondent's depression requires intensive therapy and medication, necessitating additional expenditures each month. The parties' son, Jonathan, still resides with respondent, but Edward has gone away to college. Petitioner pays for Edward's college expenses, as well as for continued therapy for the parties' daughter, Kathryn. Petitioner testified he is short approximately $796 a month in meeting expenses. In addition, petitioner owes over $11,000 in outstanding credit card debt which he maintains he incurred as a result of the separation.

The parties essentially had only two assets: the marital residence valued at $123,600, and petitioner's pension. The trial court ordered petitioner to pay $1,100 per month in child support and $880 in maintenance. These payments would increase petitioner's monthly expenses by $490 per month until the time Edward graduated from high school and $160 per month thereafter. In addition, the parties incurred attorney fees exceeding $30,000 in pursuing the dissolution.

On appeal, respondent contends the trial court abused its discretion in ordering the sale of the marital residence without considering the tax consequences for respondent or the fact that the parties' youngest son was still attending high school while residing with respondent. We note respondent failed to present evidence regarding the tax consequences of the sale of the residence. Even so, the tax consequences of the sale and the desirability of keeping the children in the family home are but two factors to be considered in distributing the marital property. (See *In re Marriage of Agazim*, 176 Ill. App. 3d at 236.) In the case at bar, those factors are clearly outweighed by the need to give the parties sufficient income upon which to rebuild their lives.

Specifically, respondent will need to purchase medical insurance in the future, and petitioner must be able to pay child support as well as assist in paying the children's college expenses. In addition, although respondent contends she will not be able afford to purchase another home in Jonathan's school district, there is no evidence that respondent cannot continue to reside within the district. Moreover, it is likely that by the time this appeal is resolved Jonathan will have graduated from high school. Thus, under the circumstances of this case, we conclude the trial court did not abuse its discretion in ordering the sale of the marital residence.

Next, respondent contends the trial court erred in awarding the 1991 dependency tax exemption for Edward to petitioner. In its order of dissolution, the trial court awarded the exemption to petitioner based on its finding that petitioner supported Edward more than 51%. Respondent argues this contention was unsupported by the evidence at trial.

It is within the authority of the trial court to allocate an exemption to the noncustodial parent and to order the custodial parent to sign a declaration for Internal Revenue Service purposes that he or she not claim the exemption. (*In re Marriage of Rogliano* (1990), 198 Ill. App. 3d 404, 415.) We conclude, as did the court in *In re Marriage of Rogliano* (198 Ill. App. 3d 404), the court should make the allocation based on which parent will be contributing the majority of the child's support. *In re Marriage of Rogliano*, 198 Ill. App. 3d at 415.

The evidence reveals that respondent earned $1,853.64 per month in net pay for approximately eight months of 1991, while she was employed as a teacher. However, respondent's contract was not renewed for the 1991-92 school year. In November 1990, the parties entered an agreed order whereby petitioner would pay $1,396 per month in unallocated support to respondent. Petitioner continued to pay this amount through December 1991. Thus, the trial court did not abuse its discretion in concluding petitioner contributed more than 51% toward Edward's support and awarding the tax exemption to petitioner.

Respondent also contends the trial court erred in concluding respondent violated the court order regarding the 1990 tax refund and awarding the refund to petitioner. Although the parties were instructed to file a joint return, petitioner persuaded respondent to file separate returns to minimize their tax liability. Petitioner testified that if the parties had filed a joint return, their tax liability would have been something in excess of $2,500. Because respondent would receive a $1,250 refund if she filed separately and petitioner would owe approximately $1,273, the parties agreed verbally to file separate returns so they would "net out" on their tax liability. However, respondent did not turn over the refund to petitioner.

The parties entered into an agreed order whereby the court permitted each party to file a separate tax return and ordered respondent to place her refund in escrow until the case was resolved. However, the court entered an order on June 4, 1991, permitting respondent to use the refund money to the extent it would cost her to hire an actuarial expert. Although petitioner testified that he be-

lieved respondent was given permission to use $500 of the refund to hire an expert, in her post-trial motion respondent states she used approximately $200 to hire an expert.

■ The record is unclear as to exactly how much of the refund respondent was ultimately given permission to spend. To the extent respondent used the refund money to hire an actuarial expert, she was not in violation of the court order. Therefore, the court abused its discretion in so holding and awarding the entire refund amount to petitioner. However, the remaining portion of the refund should not have been used by respondent. To that extent, the trial court's award of the refund to petitioner was not an abuse of discretion. On remand, the trial court should determine the exact amount of the refund used by respondent to hire an expert and award to petitioner only the remaining portion of the refund.

Respondent also contends on appeal the trial court erred in its award of $1,100 per month in child support because petitioner underreported his net income per month. Petitioner testified that his net income per month was $4,400 per month. He proposed to pay $1,100 per month in child support for Edward and Jonathan until Edward graduated from school at which time the amount would decrease to $880 per month. He also proposed to pay the full cost of the children's college tuition and expenses, in addition to providing health insurance for the two boys and maintaining a life insurance policy of $200,000. The trial court support order mirrored petitioner's proposal with the exception that it required petitioner to maintain his life insurance policy at a level of $300,000, rather than $200,000, for the benefit of the children.

The amount of an award of child support is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. (*In re Marriage of Scafuri* (1990), 203 Ill. App. 3d 385, 391.) The statutory guidelines contained in section 505 of the Act (Ill. Rev. Stat. 1991, ch. 40, par. 505) establish a beginning point for analysis. *In re Marriage of Scafuri*, 203 Ill. App. 3d at 391.

Respondent contends the trial court abused its discretion in setting child support below the statutory minimums based on her contention that petitioner underestimated his net income by taking zero exemptions toward his withholding tax and failed to report the insurance reimbursements for Kathryn's therapy. However, a close examination of the record reveals this argument lacks merit.

As to respondent's contention regarding the tax exemptions, an examination of petitioner's pay stub reveals four exemptions for

Federal tax purposes and three for State tax purposes. Regarding the insurance reimbursement, it is true that petitioner spends $400 per month on his daughter's therapy and is reimbursed at 60% for a total of $240 per month. However, even if the $240 per month is added to the trial court's determination of petitioner's base pay of $4,400, the trial court's award of $1,100 was only $60 under the statutory minimum of 25% for the two boys. Since Edward is now attending college, respondent is to receive $880 per month in support which is $48 less than the statutory minimum of 20% of petitioner's net income.

■■ Considering that, in addition to the $880 per month in child support for Jonathan, petitioner is paying the full costs of the college educations for all three children and their health insurance while maintaining a life insurance policy for their benefit, the circuit court did not abuse its discretion in its award of child support. (See *In re Marriage of Eddy* (1991), 210 Ill. App. 3d 450, 461.) However, on remand, the court may choose to increase Jonathan's support to $928 per month based on petitioner's net income of $4,640.

Lastly, respondent contends the trial court abused its discretion in awarding only $880 per month in rehabilitative maintenance. An award of maintenance is within the discretion of the trial court and will not be reversed absent an abuse of that discretion. (*In re Marriage of Hart* (1990), 194 Ill. App. 3d 839, 851.) Section 504(b) of the Act sets forth a number of relevant factors to be considered by the court in determining the amount of maintenance to be awarded, including but not limited to: the financial resources of the party seeking maintenance; the standard of living established during the marriage; the duration of the marriage; the age and the physical and emotional condition of both parties; and the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance. (Ill. Rev. Stat. 1991, ch. 40, par. 504(b).) The amount of marital property apportioned to each party is also a factor to be considered in determining maintenance.

Respondent in this case was 50 years old at the time of trial and petitioner was 46. The parties were married for almost 22 years, and they enjoyed a comfortable standard of living prior to dissolution. Petitioner's ability to earn income and acquire assets in the future is far superior to that of respondent. Moreover, the evidence reveals respondent is suffering from severe depression and is unable to work. As a teacher, respondent will be able to support

herself adequately once she recovers from her illness. Although her prognosis for recovery is quite good, the evidence presented below reveals she will need to continue therapy on an intensive basis in order to recover. It is in the best interests of both petitioner and respondent that she recover so that she will become self-reliant and not depend on maintenance for support.

The trial court awarded respondent rehabilitative maintenance in the amount of $880 per month. Respondent contends that amount does not permit her to continue medical treatment for her illness. At the same time, petitioner contends his monthly expenses exceed his income.

■ In her post-trial motion, respondent requested $2,500 total support from petitioner, including child support. The trial court awarded her $1,760-per-month total support, including $880 per month in child support. The evidence below is unclear as to the exact cost of the medical treatments necessary to enable respondent to recover. On remand, the trial court should determine the medical expenditures necessary to enable respondent to continue therapy, including any reimbursement received through medical insurance, and reconsider its award of maintenance if necessary. We reiterate it is the best interest of both parties to enable respondent to recover so that she can support herself rather than depend upon petitioner for support while never recovering from her illness.

Accordingly, the judgment of the circuit court of Du Page County is affirmed in part and vacated in part, and the cause is remanded with instructions.

Affirmed in part; vacated in part and remanded with instructions.

GEIGER and DOYLE, JJ., concur.