1998-NMCA-170

968 P.2d 814

**Jan Marie MACIAS, Petitioner–Appellant,**

v.

**Jose L. MACIAS, Sr., Respondent–Appellee.**

**No. 18,883.**

Court of Appeals of New Mexico.

Oct. 7, 1998.

Jefferson R. Rhodes, Burroughs & Rhodes, Alamogordo, for Appellant.

Gail Wade Brownfield, Law Office of Gail Wade Brownfield, P.C., Alamogordo, for Appellee.

*OPINION*

BOSSON, J.

{1} In this divorce case we decide an issue of first impression that federal tax law, and particularly the Tax Reform Act of 1984, 26 U.S.C. § 152(e) (1998), does not preempt the ability of state courts to allocate tax exemptions for dependent children between custodial and noncustodial parents. We also discuss the standard for determining when a spouse has transmuted separate property into community property. We affirm the trial court on the first issue but vacate and remand on the second.

**BACKGROUND**

{2} The parties married in 1978 and divorced on September 12, 1997. They had three children who were approximately ages 17, 13, and 10 at the time of the divorce. The trial court awarded physical custody of the minor children to Wife and ordered Husband to pay support and maintenance equaling two-thirds of their total needs, recognizing that Wife would be responsible for the balance. Based on this ratio of support payments between the parties, the court concluded that it would be equitable

for Husband to enjoy two-thirds of the federal income tax exemptions that accrue from the support of dependent children and Wife would receive one-third, despite a provision in the federal tax law providing that the tax exemptions generally go to the custodial parent. The court also established a plan for the future allocation of tax exemptions between the two parents as the children gradually reached the age of majority. Wife objects to this allocation asserting that federal law controls and that the court had no choice but to allow Wife, as the custodial parent of all three children, to receive the exemptions for each child regardless of support payments.

{3} The parties also disputed a claim by Wife to a separate property interest in the marital residence. During the marriage Wife's mother died intestate, and Wife inherited an undivided one-third interest in a residence located at 613 Boyce in Alamogordo. Thereafter in 1986, Husband and Wife jointly purchased the remaining two-thirds interest from Wife's two sisters, and they received as community property a warranty deed to "an undivided two-thirds interest" in the residence in the name of "Jose L. Macias and Jan Macias, his wife." Husband and Wife moved into the house and made it their marital residence. To finance the purchase, Husband and Wife mortgaged the entire residence, including Wife's inherited one-third interest, and borrowed its full value from a local bank. Approximately two-thirds of the loan went to pay the sisters for their interest in the house, and the remainder went to pay unrelated community debts and to purchase various assets for the benefit of the community. Over the years, community funds were used to service the loan, to maintain the residence, and to pay property taxes on it.

{4} Wife claimed that one-third of the value of the residence was her sole and separate property by virtue of inheritance. Husband claimed it was community property and testified that Wife had never before expressed any claim to a separate property interest in the residence and that he had always understood the entire residence to be community property. After a factual hearing, the trial court agreed with Husband.

The court concluded that although Wife had acquired her undivided one-third interest by way of inheritance, her separate property interest had been transmuted into community property.

## DISCUSSION

### The Court May Allocate Tax Exemptions for Dependent Children Between Parents

{5} Historically, states have allocated tax exemptions between divorcing spouses as part of their responsibility to provide for the continued support and welfare of the minor children. *See* Gavin L. Phillips, Annotation, *State Court's Authority, in Marital or Child Custody Proceeding, to Allocate Federal Income Tax Dependency Exemption for Child to Noncustodial Parent Under § 152(e) of the Internal Revenue Code (26 USCA § 152(e)),* 77 A.L.R.4th 786, 790 (1990) [hereinafter Phillips]; *see also* Thomas C. Montoya et al., *New Mexico Domestic Relations Manual Law and Forms* § 4.212, at 4–15 (1995) [hereinafter Montoya] (noting that "[i]n awarding the dependency exemption, careful consideration should be given to the tax benefits"). Before the passage of the Tax Reform Act of 1984, federal tax law generally permitted a non-custodial parent to receive the tax exemption if he or she paid more than $1200 toward the support of a child in any calendar year and if the custodial parent did not clearly establish that he or she provided more support for the child during the calendar year than the non-custodial parent. *See* Phillips, *supra.* For purposes of allocating the dependency exemption, the 1984 tax law created a presumption that child support, and therefore entitlement to the dependency exemption, attached to custody. Thus, under the tax law, the spouse having physical custody of the child "shall be treated" as providing more than half the support and thus entitled to the exemption. *See* 26 U.S.C. § 152(e)(1)(B). That legal presumption is subject to certain exceptions, including one which allows the custodial parent to waive the exemption in favor of the non-custodial parent by signing a written declaration to that effect on a specified federal form (Federal Tax Form 8332 (Rev. June 1996)), pledging that the custodial parent will not

take the exemption. *See* 26 U.S.C. § 152(e)(2).

{6} The 1984 tax law does not provide any direct role for state courts. For example, there is no specific authority for a state court to allocate dependency exemptions between parents and then to order the custodial parent to waive the exemption in favor of the other parent. Accordingly in the case before us, Wife as the custodial spouse argues that the allocation of dependency exemptions has been preempted by federal law in which Congress has first set forth the presumption, and then has allowed limited exceptions, none of which permit what the trial court did here or otherwise authorize intervention by state courts. Husband, on the other hand, maintains that mere silence in the federal law should not exclude state court intervention, especially in an area so traditionally a matter of state concern. Although New Mexico has not yet had occasion to resolve this problem, many other jurisdictions have, and we are fortunate to be guided by the wisdom of those opinions.

{7} Husband maintains, without contradiction from Wife, that the majority of jurisdictions do permit their state courts to enter an order not unlike that issued by the trial court in this case: allocating dependency exemptions between custodial and non-custodial parents. Based on our review, we agree and note further that it appears to be a growing trend. *See, e.g., In re Marriage of Clabault,* 249 Ill.App.3d 641, 188 Ill.Dec. 799, 619 N.E.2d 163, 169 (Ill.App.Ct.1993); *Boudreau v. Boudreau,* 563 So.2d 1244, 1246 (La.Ct. App.1990); *Fear v. Rogers,* 207 Mich.App. 642, 526 N.W.2d 197, 198 n. 2 (Mich.Ct.App. 1994); *Hoffman v. Hoffman,* 870 S.W.2d 480, 484 (Mo.Ct.App.1994); *Hall v. Hall,* 238 Neb. 686, 472 N.W.2d 217, 220 (Neb.1991); *Goode v. Goode,* 70 Ohio App.3d 125, 590 N.E.2d 439, 444 (Ohio Ct.App.1991); *Lamb v. Lamb,* 848 P.2d 582, 583 (Okla.Ct.App.1992); *Hay v. Hay,* 119 Or.App. 372, 850 P.2d 410, 411 (Or.Ct.App.1993); *Sommerfield v. Sommerfield,* 154 Wis.2d 840, 454 N.W.2d 55, 59 (Wis.Ct.App.1990). Today, the substantial majority of jurisdictions that have considered the matter hold that federal law does not preempt a state law or procedure that permits a state court to allocate dependency exemptions between parents based on support payments made by the non-custodial spouse.

{8} We find these opinions persuasive and elect to side with the clear majority on this issue. We observe that courts have traditionally considered dependency exemptions as another form of financial resource to be allocated for the benefit of minor children. *See Hart v. Hart,* 774 S.W.2d 455, 457 (Ky. Ct.App.1989). Allocating a dependency exemption to one parent or the other may, as a practical matter, liberate additional funds with which that parent can contribute more to the support and maintenance of the children. For example, if the non-custodial parent enjoys a significantly higher income tax bracket than the custodial parent, then awarding the dependency exemption to the non-custodial parent may result in larger tax savings to the non-custodial parent than if the exemption were taken by the lower-income, custodial parent. A court can then route that tax savings into greater support for the children, because increased tax savings will mean increased financial resources that can be utilized for the children's benefit. In theory, as well as in practice, allocating dependency exemptions can serve a constructive purpose that in every way conforms to the core responsibility of New Mexico courts to provide for the minor children of divorce. *See Nichols v. Tedder,* 547 So.2d 766, 774 (Miss.1989) (denying state court power to allocate dependency exemption would only serve to reward the IRS and punish the non-custodial parent with the real loser being the dependent child).

{9} We are not disposed to presume that Congress intended to tie the hands of our state judiciary, especially when the law on its face does not preclude the state from acting. *See Fleck v. Fleck,* 427 N.W.2d 355, 359 (N.D.1988) (state court allocation of dependency exemption does not interfere with congressional intent); *Cross v. Cross,* 178 W.Va. 563, 363 S.E.2d 449, 457 (W.Va.1987) (statute's silence does not indicate preemption but rather congressional indifference to how exemption is allocated as long as it does not burden the IRS). Our conclusion is but-

tressed by the federal law permitting a waiver in favor of the non-custodial spouse. *See* 26 U.S.C. § 152(e)(2). As other courts have done, we read the federal law not as a deliberate choice in favor of the custodial parent, but more as a method of facilitating tax preparation by invoking a presumption in favor of the custodial parent that is easy to administer and yet which provides flexibility for parents and state courts to decide differently. *See In re Marriage of Milesnick,* 235 Mont. 88, 765 P.2d 751, 753–54 (Mont.1988); *see also Hart,* 774 S.W.2d at 457; *Cross,* 363 S.E.2d at 457.

{10} Among jurisdictions situated similarly to New Mexico, the more difficult question seems to be whether a state court, after allocating dependency exemptions between the parents, can then enforce its ruling by ordering a recalcitrant custodial parent to execute the federal waiver in favor of his or her former spouse under penalty of contempt. *See McKenzie v. Kinsey,* 532 So.2d 98, 100 n. 3 (Fla.Dist.Ct.App.1988) (stating that absent some express authority in the statute, taxpayer is not entitled to exemption and state court is not authorized to require custodial parent to sign waiver). Our review of the authorities indicates that the split among the jurisdictions may be more evenly balanced, but that a majority nonetheless favors the power of state courts to enforce allocation decisions unfettered by federal law. *See Lincoln v. Lincoln,* 155 Ariz. 272, 746 P.2d 13, 17 (Ariz.Ct.App.1987); *In re Marriage of Beyer,* 789 P.2d 468, 470 (Colo.Ct. App.1989); *In re Marriage of Rogliano,* 198 Ill.App.3d 404, 144 Ill.Dec. 595, 555 N.E.2d 1114, 1121 (Ill.App.Ct.1990); *Boudreau,* 563 So.2d at 1246; *Wassif v. Wassif,* 77 Md.App. 750, 551 A.2d 935, 940 (Md.Ct. Spec.App.1989); *Bailey v. Bailey,* 27 Mass. App.Ct. 502, 540 N.E.2d 187, 189 (Mass.App. Ct.1989); *Tedder,* 547 So.2d at 778; *Babka v. Babka,* 234 Neb. 674, 452 N.W.2d 286, 289 (Neb.1990); *Gwodz v. Gwodz,* 234 N.J.Super. 56, 560 A.2d 85, 88 (N.J.Super.Ct.App.Div.1989); *Esber v. Esber,* 63 Ohio App.3d 394, 579 N.E.2d 222, 226 (Ohio Ct.App.1989); *Lamb,* 848 P.2d at 583; *In re Marriage of Peacock,* 54 Wash.App. 12, 771 P.2d 767, 769 (Wash.Ct.App.1989); *Cross,* 363 S.E.2d at 459; *Pergolski v. Pergolski,* 143

Wis.2d 166, 420 N.W.2d 414, 417 (Wis.Ct. App.1988).

{11} However, we need not decide this precise question in this opinion. We note that the trial court allocated the dependency exemptions, but the court did not issue an express order to Wife that she execute the relevant waiver forms with the Internal Revenue Service. It would be premature, therefore, to speculate on what enforcement means the trial court might utilize, or what additional orders might issue, if and when Wife were to disobey the trial court's allocation order. At this juncture we will assume that Wife, having failed to persuade us with regard to preemption, will comply with the lawful order of the court.

## Wife's Separate Property Interest in the Residence

{12} Normally, property acquired during marriage is presumed to be property of the community, *see Stroshine v. Stroshine,* 98 N.M. 742, 743, 652 P.2d 1193, 1194 (1982), and the burden rests with the protesting spouse to prove otherwise. *See Nichols v. Nichols,* 98 N.M. 322, 327, 648 P.2d 780, 785 (1982). However, in this case the trial court found, unchallenged on appeal, that Wife "did acquire by inheritance an undivided one-third interest in" the residence from her mother. By operation of law it became separate property at acquisition. *See* NMSA 1978, § 40–3–8(A)(4) (1990). The court entered a conclusion of law, again without challenge on appeal, that Wife's one-third interest was her separate property even though acquired during marriage. The pivotal question, therefore, is whether subsequent events during the marriage caused a transmutation of that one-third interest from separate into community property. In New Mexico the law requires clear and convincing evidence of spousal intent to do so. *See Nichols,* 98 N.M. at 327, 648 P.2d at 785. The spouse who argues in favor of transmutation carries what has been variously described as a "difficult" or a "heavy" burden, *see Blake v. Blake,* 102 N.M. 354, 367, 695 P.2d 838, 851 (Ct.App. 1985), to produce a "clear, strong and convincing" case. *Id.* "[A] mere preponderance of the evidence will not suffice to effect it."

*Chavez v. Chavez,* 56 N.M. 393, 397, 244 P.2d 781, 783 (1952).

▮▮ {13} Our courts have made clear for some time that transmutation requires evidence of intent on the part of the grantor spouse. Therefore, even a deed or other document showing joint title does not transmute separate property if there is no intent to do so. *See Nichols,* 98 N.M. at 328, 648 P.2d at 786. As our Supreme Court stated in *Swink v. Fingado,* 115 N.M. 275, 292, 850 P.2d 978, 995 (1993), "[i]t is well settled that when a spouse merely places his or her separate property into joint tenancy with the other spouse, without an intention to make a gift or otherwise transmute the separate property into a true joint tenancy in which each spouse has an undivided one-half interest, the property retains its character as separate property." *See also LeClert v. LeClert,* 80 N.M. 235, 237, 453 P.2d 755, 757 (1969) (placing separate funds into a joint account did not transmute separate property into community property without a finding of an intent to do so); *Burlingham v. Burlingham,* 72 N.M. 433, 441–443, 384 P.2d 699, 705–07 (1963) (same). A title document and, by extension, a mortgage may be *evidence* of such intent to transmute, but it "is not conclusive and is not, by itself, substantial evidence ... of intent to transmute." *Nichols,* 98 N.M. at 328, 648 P.2d at 786.

▮ {14} In the case before us, Wife apparently never expressed any intention to transfer her separate interest into the community. The trial court made no finding of any such intent, and Husband never asked the court to do so.

{15} Two factors principally persuaded the trial court that transmutation had occurred, both of which Husband argues on appeal: (1) the fact of a joint mortgage placed on the entire house to secure a loan to the community, and (2) the use of community funds thereafter to service the loan and pay for upkeep and taxes on the house. The trial court also noted that the house was "always treated as being jointly owned by the parties" during the marriage. The court was also influenced by the lack of documentation, either asserting Wife's claim to separate property at the time of acquisition or pre-

serving its separate character at the time of the mortgage loan to the community.

{16} Although no one of these factors would likely support a conclusion of transmutation, they can be considered collectively as evidence of Wife's intent to transmute her separate property into the community. Our problem, simply stated, is that we cannot discern from the record whether the court ever regarded the evidence in this light—as evidence of intent—because the court was never asked to make such a finding, and the court never expressed any determination to this effect.

{17} We are left, then, with the possibility that the court might have considered these factors sufficient for transmutation, even without Wife's intent, an outcome which would be unacceptable. For example, the Wife's silence at the time of the mortgage to the community does not itself prove transmutation. Wife had no burden to protest or explain. It was up to Husband to prove transmutation by clear and convincing evidence; it was not up to Wife to rebut it. *See Wilson v. Clancy,* 747 F.Supp. 1154, 1158–59 (D.Md.1990) (discussing the probative value of silence in a case involving title to land and indicating that unless the silence is present under circumstances that compel speech, such silence is so weak and so fraught with speculation that it ought to be inadmissible), *aff'd,* 940 F.2d 654 (4th Cir.1991); *see also State v. Doe,* 91 N.M. 92, 93–94, 570 P.2d 923, 924–25 (Ct.App.1977) (similar in the context of a criminal case). Citing Section 40–3–8(A)(5), Husband also argues that at the time both parties executed the mortgage on the house, Wife could have prepared a written agreement clarifying that she retained her undivided one-third interest as her sole and separate property. While this might have been a prudent course under the circumstances, Wife was not legally obliged to do so. That statute refers to designating a separate property interest in "property held by the spouses as joint tenants or tenants in common," which in this case could refer only to the undivided two-thirds interest jointly acquired from Wife's sisters, and in which Wife did *not* claim any separate interest. Her one-third interest acquired by "devise or

descent" is designated in the statute as separate property by operation of law, and needs no such written agreement either to be created or preserved as separate property. *See* § 40–3–8(A)(4).

{18} Similarly, we would hesitate to say that a joint mortgage on the residence securing a loan to the community constitutes clear and convincing evidence of transmutation without some further evidence of intent. A mortgage is merely a security interest; by itself it conveys no title unless foreclosed upon. Wife never executed a deed conveying her undivided one-third interest either to the bank or to the community, and even if she had, this alone would fall short of the high standard necessary to prove transmutation. *See Nichols*, 98 N.M. at 328, 648 P.2d at 786.

{19} The use of community funds to pay the mortgage, to pay for upkeep, and to pay taxes on the residence also fall short of proving transmutation by themselves. Community funds were used to pay the mortgage debt because it was a debt of the community. The loan proceeds went to acquire the two-thirds interest from Wife's sisters, as well as for other, unrelated community debts. None of the loan proceeds went to pay Wife's separate debts or to purchase separate assets for her, and thus, community assets were not used for the benefit of Wife's separate property. The proceeds of this loan were not used to purchase Wife's separate interest. It is true that Wife allowed the lines between her separate property and property of the community to be blurred, and, taken in context, this might reasonably be considered as evidence of a donative intent on her part. Here again, however, that conclusion properly belongs to the trial court, and it was omitted from the record below.

{20} We are left with a legal conclusion of transmutation which lacks support in the findings as they now stand. Not only are the findings incomplete, but they are internally inconsistent. For example, the court concludes at once that Wife "owns an undivided one-third interest" in the residence as her separate property, yet the court also concludes that the entire house is community property.

{21} In fairness, the best option is to vacate and remand to enable the trial court to review the existing record and its findings, and then come to a conclusion which either supports or rejects transmutation, keeping in mind the high standard of "clear, strong and convincing evidence" that belabors Husband in any such effort.

**CONCLUSION**

{22} We vacate that portion of the trial court's decree which concluded that the marital residence of the parties located at 613 Boyce in Alamogordo was all community property, and we remand to the trial court to review the existing record and its findings, and to make all appropriate revisions therein, and then come to a conclusion which either supports or rejects transmutation. In all other respects the decree of the trial court is affirmed. The parties shall bear their own appellate costs.

{23} **IT IS SO ORDERED.**

PICKARD and BUSTAMANTE, JJ., concur.