*In re* MARRIAGE OF JAMES G. ASLAKSEN, Petitioner-Appellant, and CONSTANCE M. ASLAKSEN, Respondent-Appellee.

Second District   No. 2—85—0539

Opinion filed October 31, 1986.

Robert A. Chapski and Vincent C. Argento, both of Elgin, for appellant.

John C. Banbury, of Banbury & Davis, of Aurora, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Petitioner, James Aslaksen, brought this action to dissolve his marriage to respondent, Constance M. Aslaksen. The trial court dissolved the marriage and subsequently entered a supplemental judgment with respect to the property rights of the parties, custody of the parties' minor children and support. The petitioner appeals from the entry of that supplemental judgment, contending that the trial court erred in finding him guilty of dissipation of marital assets, erred in awarding maintenance to the respondent, and erred in awarding attorney fees to the respondent in the form of maintenance.

The parties were married in 1970. Two children were born to the marriage and were minors at the time of the petition for dissolution of marriage. The petitioner was employed by O'Brien Company as national sales manager and earned approximately $60,000 gross per year. The respondent was employed part-time as a nurse, earning ap-

proximately $16,000 to $17,000 per year gross. The major assets of the marriage were the marital residence, which was sold during the proceedings for $159,000, and a money market account at A. G. Edwards in the amount of $14,030.33. There were two mortgages on the marital residence, requiring monthly payments of $1,944.88 in total.

In November 1982, petitioner filed a petition for dissolution of the parties' marriage. On respondent's petition for temporary allowance, the court ordered petitioner to continue making both mortgage payments and to pay respondent $200 per month support.

In April 1983, the respondent filed a petition for rule to show cause alleging that the petitioner had not paid the mortgages and that the loans would be called. The parties entered into an agreed order which permitted the respondent to invade the A. G. Edwards account to bring the mortgage current and to list the marital residence for sale. On June 22, 1983, respondent filed another rule to show cause, again alleging that the petitioner had not made the monthly payments. Petitioner filed a petition asking that the support and mortgage payments be modified because he was financially unable to make the payments. The trial court ordered petitioner's wages garnished in the amount of the mortgage and support payments, and authorized respondent to withdraw $5,025 from the A. G. Edwards account to bring the mortgages current again.

In September 1983, petitioner lost his job and remained unemployed until January 1984, when he was employed by AGA Gas Incorporated at a salary of approximately $35,000 per year. During his unemployment, petitioner received $200-per-week unemployment compensation, termination pay in the amount of $6,400 gross and withdrew $2,417.31 from his pension fund. Petitioner had also received a bonus of $7,500 gross, which was paid in April 1983.

On October 4, 1983, a hearing as to grounds only was held, and the trial court entered a judgment for dissolution of marriage. The case was continued for trial on the remaining issues. On March 23, 1984, the trial court entered an order providing that petitioner was to continue to pay the support of $200 per month and to "use best efforts to pay expenses."

The closing of the sale of the marital residence took place on June 12, 1984. According to the payoff letters, the first mortgage to Allstate had not been paid since October 1983, and the second mortgage to Lomas & Nettleton had not been paid since August 1983.

At trial, petitioner, who had remarried, testified that he had used his best efforts to pay bills. He admitted that he had paid his present wife's attorney fees and had repaid loans to his sister and his new

wife's mother. In addition, since his separation from respondent, he had taken trips with his present wife to Hawaii, Europe and California, which he characterized as "business trips," as well as a honeymoon trip to Mexico. He maintained that his present wife had reimbursed him for the attorney fees he had paid on her behalf and had paid for the honeymoon trip to Mexico, as well as all of her own expenses on the business trips.

In its letter opinion, the trial court began by characterizing the testimony of the respondent as credible and that of the petitioner as not credible. The trial court found that petitioner failed to use the monies received by him to satisfy the mortgage payments, which he was under a court order to pay. The trial court concluded that the petitioner had dissipated the major marital assets: the marital residence by failing to make the mortgage payments, thus putting the property into foreclosure; and the A. G. Edwards account since the resulting mortgage deficiencies were made up from that account.

The trial court then determined that, based upon the disparity of the parties' income, the respondent should receive 60% of the marital assets and the petitioner 40%.

The trial court determined that the petitioner had dissipated the proceeds that should have been received from the sale of the marital residence in the amount of $20,343.87. The amount of the dissipation was calculated by subtracting the encumbrances of $124,726.13 as listed on Exhibit A of petitioner's July 6, 1983, petition for modification of an agreed temporary relief order and the real estate broker's commission of $9,594 from the sales price of $159,900. The trial court then reduced the amount of dissipation by giving petitioner credit for $5,236, which was the actual cash left after the closing on the marital residence.

The trial court then awarded respondent 60% of the dissipated funds, or $12,206.32. The trial court also awarded her 60% of the original amount in the A. G. Edwards money market fund less a withdrawal of $5,498 she made for purchasing an automobile. The trial court also awarded her $4,000 in attorney fees for a total of $21,704.32. The trial court then credited her with $5,236 (the actual net proceeds from the sale of the marital residence) and $800 (the approximate amount remaining in the A. G. Edwards account), leaving a total balance due to her of $15,668.32. The trial court then determined that the balance should be paid to the respondent as maintenance in either weekly or monthly installments over a period of five years. This appeal followed.

■ Petitioner contends first that the trial court erred in deter-

mining that he had dissipated the marital assets.

Dissipation of marital assets occurs when a spouse uses marital property for his or her own benefit for a purpose unrelated to marriage while the marriage is breaking down. (*In re Marriage of Sevon* (1983), 117 Ill. App. 3d 313, 317; see *Klingberg v. Klingberg* (1979), 68 Ill. App. 513.) Whether a given course of conduct constitutes dissipation within the meaning of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 101 *et seq.*) depends upon the facts of the particular cases. *In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710, 719.

The two leading cases in this area are *In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710,and *In re Marriage of Cook* (1983), 117 Ill. App. 3d 844. In the former case, the husband, an attorney, testified to gross earnings of $78,840 and net earnings of $20,500. The wife earned around $6,500 gross per year and received $750 per month temporary support for herself and two children. The husband refused to make the monthly mortgage payments on the family home, and approximately $60,000 in equity was lost as a result of foreclosure proceedings. The court ordered the husband to pay to the wife one-half of the equity since he allowed the home to go into foreclosure, although he had the opportunity to prevent it. The appellate court upheld the award and the finding of dissipation. We note too that, unlike the case before us, in the *Siegel* case the husband was not under a court order to make the mortgage payments.

In *In re Marriage of Cook*, the court awarded to the wife the majority of the remaining assets to compensate her for the dissipation of the assets by the husband. The court found that prior to the parties' marital difficulties, the husband regularly made payments of the mortgages and taxes on the various properties owned by the parties. Subsequent to the filing of the suit, he discontinued the payments. This resulted in foreclosure actions being filed against the real estate, including the marital residence, owned by the parties. In addition, approximately 17 rules to show cause were requested by the wife in an attempt to compel the husband to comply with temporary maintenance orders. Despite the husband's argument that his obligation to pay maintenance left him incapable of maintaining the marital assets, the appellate court upheld the finding of dissipation and the award to the wife.

Petitioner seeks to distinguish his conduct from the conduct of the husbands in the above cases on the basis that he lacked the financial ability to prevent the mortgage from going into foreclosure and that, unlike the wives in the previous cases, respondent here had the ability

to prevent the foreclosure.

■ However, as previously noted, petitioner here was required by court order to make the mortgage payments. Although the petitioner makes much of his period of unemployment, the record shows that he was not making mortgage payments at the time he was still collecting a salary of $60,000 per year. In the very month that respondent had to apply to the court for assistance in getting the mortgages paid, petitioner received a bonus of $7,500 gross. We are also unimpressed with petitioner's argument that respondent's $17,000 per year salary was sufficient to make the mortgage payments while his salary of $35,000 did not enable him to make these payments.

Petitioner emphasizes that the court order entered in March of 1984 required petitioner to use "best efforts" in meeting the financial obligations. However, petitioner had ceased making mortgage payments as of October 1983, and the marital residence was sold in June 1984. Further, there does not appear to be any evidence of any efforts on petitioner's part, let alone best efforts, to meet his financial obligations.

■ Petitioner also argues with the trial court's method of determining the dissipated amounts. Petitioner contends that, since the parties redeemed the property from foreclosure, there was only $5,236 in equity rather than $20,343.87 as determined by the court. The trial court's figure of $124,726.13 as the total encumbrance comes from an exhibit submitted by petitioner himself. Comparing the payoff letters in the record for the two mortgages, the principal balance was $124,378.16. In view of the relatively small differences in the two figures, the trial court's calculations will be upheld. Further, the trial court's figures were an attempt to show what the equity would have been had petitioner not allowed the property to go into foreclosure.

Petitioner argues that even if there was dissipation respondent should be compensated with an increased portion of the remaining assets, citing *In re Marriage of Cook* (1983), 117 Ill. App. 3d 844. However, unlike that case, in the present case there were insufficient assets remaining.

We hold, therefore, that the trial court did not err in finding that the petitioner had dissipated marital assets.

■ ■ Next, the petitioner contends that the trial court erred in awarding maintenance to the respondent.

Section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 504(a)) provides, in part, that the court may grant maintenance if it finds that the spouse seeking main-

tenance (1) lacks sufficient property to provide for his reasonable needs; (2) is unable to support himself through appropriate employment; or (3) is otherwise without sufficient income. The amount and duration of a maintenance award, without regard to marital misconduct, is to be determined after consideration of all relevant factors including (1) the financial resources of the party seeking maintenance, including marital property apportioned to him and his ability to meet his own needs independently; (2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment; (3) the standard of living established during the marriage; (4) the duration of the marriage; (5) the age and physical and emotional condition of both parties; and (6) the ability to the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance. (*In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710, 720; Ill. Rev. Stat. 1983, ch. 40, par. 504(b).) The propriety of a maintenance award, as well as the granting of such an award, are matters within the sound discretion of the trial court, and the award will not be disturbed on appeal unless it amounts to an abuse of discretion or is against the manifest weight of the evidence. Although it is not necessary for the trial court to designate specifically the portion of section 504(a) upon which it founded the award of maintenance, the basis for the award must be established in the record. *In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710, 720-21.

In the case before us, the parties were married for 12 years prior to their separation. Between them they had an income in excess of $87,000 gross per year. They owned an expensive home and, apparently, lived quite well. While petitioner claims his health is poor due to a heart attack suffered in 1979, he has remained consistently employed except for a brief period of unemployment which, apparently, was not health related, and he has, in fact, remarried. Even though he took an extensive cut in salary, he still earns almost twice as much as respondent. In denying petitioner's post-trial motion to set aside the supplemental judgment, the trial court wrote:

"Awards of maintenance are proper if the Court finds in addition to the factors of 504 the spouse seeking maintenance lacks sufficient property including marital property to provide for her reasonable needs. Had petitioner not dissipated all the marital assets, an award of maintenance might not have been proper. However, due to the fact that petitioner *DID* dissipate all the marital assets, I believe an award of maintenance to be proper." (Emphasis in original.)

Petitioner argues that since section 504(b) specifically states that awards of maintenance should be "made without regard to marital misconduct" (Ill. Rev. Stat. 1983, ch. 40, par. 504(b)), the court, by tying the award to the dissipation, made an improper award of maintenance.

Such an interpretation as urged by petitioner would allow a party to dispose of all marital assets and yet cry foul if the court awarded maintenance due to the lack of any marital property. It seems clear that the trial court's statement merely clarified that, because there was insufficient property to award to respondent to meet her needs, maintenance was appropriate.

■ Finally, petitioner contends that the trial court erred in ordering that the award of attorney fees be paid to the respondent as maintenance. While petitioner does not dispute the propriety of the award nor the amount, he does object to the characterization of the award as maintenance. Petitioner suggests that the reason the trial court awarded the attorney fees as maintenance was its fear that petitioner would file bankruptcy.

At one point in the proceedings, respondent's counsel suggested that petitioner might be considering filing for bankruptcy. Petitioner's counsel objected. The trial court sustained the objection and stated further that there was no indication on the record that petitioner was going to file bankruptcy. Further, in denying petitioner's post-trial motion, the court specifically stated, "No attempt was made to convert property aspects to maintenance and further potential bankruptcy proceedings by petitioner were never considered. *** [T]ax consequences to the parties were considered."

Section 508 of the Illinois Marriage and Dissolution of Marriage Act provides in pertinent part as follows:

"The court may order that the award of attorney's fees and costs hereunder be paid directly to the attorney, who may enforce such order in his name, or that they be paid to the relevant party." Ill. Rev. Stat. 1983, ch. 40, par. 508(c).

We agree with the petitioner that the trial court erred in awarding attorney fees as maintenance in that the above statute does not provide for the payment of an award of attorney fees as maintenance. It is not the province of the courts to inject provisions not found in a statute. *In re Objection of Cook to Referendum* (1984), 122 Ill. App. 3d 1068, 1072; *In re Estate of Swiecicki* (1984), 121 Ill. App. 3d 705, *aff'd* (1985), 106 Ill. 2d 111.

Based upon the foregoing, we hold as follows: The finding of dissipation of marital assets by the petitioner is affirmed; the award of

maintenance minus the attorney fees award of $4,000 is affirmed; and the attorney fees award in the amount of $4,000 to the respondent is affirmed.

Affirmed as modified.

NASH, P.J., and STROUSE, J., concur.