*In re* MARRIAGE OF GLORIA PARKER, Petitioner-Appellee, and JERRY L. PARKER, Respondent-Appellant.

First District (4th Division)   No. 1—92—1220

Opinion filed September 2, 1993.

LeVine, Wittenberg & Shugan, Ltd., of Homewood (Ross B. Shugan and Howard M. LeVine, of counsel), for appellant.

Lester L. Barclay, of Chicago, for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

Respondent, Jerry L. Parker, appeals from a judgment dissolving his marriage to petitioner, Gloria Parker, which divided the marital property and required Jerry to pay Gloria's attorney fees. He argues on appeal that the trial judge abused her discretion when she: (1) did not find that Gloria dissipated marital assets in failing to pay the mortgage on the marital home; (2) awarded Gloria half of Jerry's interest in property he held in joint tenancy with another person; (3) awarded Gloria half of Jerry's pension when he was employed for three years before they were married; and (4) required Jerry to pay Gloria's attorney fees. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

In October 1989, Gloria filed a petition for dissolution of marriage. At trial, she testified that she married Jerry in 1963 and they had two children. During their marriage, Gloria and Jerry purchased a house where they lived with their children and Gloria's two children from a previous marriage. At the time of trial, she was 52 years old and the parties' children were both adults.

Jerry moved out of the marital home in January 1975 and moved into a house on Maude Street that he purchased with a woman friend. Gloria admitted that she did not contribute any money to purchase the Maude Street property. After Jerry left, he continued to pay the mortgage on the marital home in the amount of $116 per month until 1985 but he did not pay the utilities or child support.

Gloria testified that after Jerry stopped making the mortgage payments in 1985, she was financially unable to pay the mortgage. She was earning about $20,000 per year but lost her job in October 1986. She will receive a pension from that job in the amount of $200 per month when she is 65 years old. Although she received $2,600 in severance pay and $4,000 from a stock plan when she left her job, she did not use that money to pay the mortgage. Gloria did not obtain

employment again until 1988; she collected unemployment compensation in the interim.

Because the payments were not being made, the lender began foreclosure proceedings against the marital home. Gloria testified that in October 1987, she borrowed $14,997 from another lender at an interest of 17.5% to save the house from foreclosure. She signed her name and Jerry's name, without his consent, to a quitclaim deed as part of the transaction. She testified that she signed Jerry's name because her children needed a place to stay and she was desperate. The lender paid between $6,000 and $7,000 of the loan for the remaining mortgage balance, back taxes, and water bill on the house. Gloria testified that she did not receive the remaining balance of the loan. The monthly payment on the loan was $375. She stopped making payments on that loan in June 1990. Her annual gross income at that time was $11,713. The lender foreclosed on the note and a judgment of foreclosure was entered in April 1991.

Jerry testified that after he moved out of the marital home, he continued to pay the mortgage, utilities, and furniture bills. He stopped paying the mortgage in 1985 because Gloria was earning more money than he was. He testified that at that time, the balance of the mortgage was $2,500.

After he moved out, he had custody of their children every weekend and every summer and during that time, he supported them. Although he did not pay child support, he claimed one of his children as a dependent on his tax return.

When he moved out, he purchased a building on Maude Street for $15,000 with Gloria Davis; they owned the property as joint tenants. They deposited their checks into a joint account and paid the expenses of the property from that account. Prior to her death in 1991, Davis signed a document attempting to transfer her interest in the property to her mother. Jerry and an attorney were present at the time. Based on the document, Davis' mother was claiming an interest in the property; Jerry testified that he did not help Davis or her mother break the joint tenancy. The claim was pending in probate court at the time judgment was entered in this case.

The Maude Street property, which was unencumbered, was appraised at $230,000 and the marital home was appraised at $30,000.

Jerry testified that he began accumulating a pension from his employer in 1960, about three years before he married Gloria. At the time of trial, he had been receiving the pension for about two years; the gross amount of the pension was $1,327. He also earned about $60 to $80 per week driving a cab one or two nights a week. Jerry

admitted that he earned an additional $200 per month in rent from one of his sons who was living with him in the Maude Street property.

After hearing the evidence, the trial judge found that Jerry had at least a one-half interest in the Maude Street property. The judge awarded Gloria $57,500 as one half of Jerry's minimum interest in the property. Further, the judge found that if the probate court found that Jerry succeeded to Davis' interest in the property by operation of the joint tenancy, then Gloria would be awarded an additional $57,500, which was half of the remaining interest in the property. However, if the probate court found that the joint tenancy was severed, Gloria would not receive any additional award from the property. Gloria was awarded the marital home if it could be redeemed from foreclosure, and she was responsible for any foreclosure amount and deficiency. There was no finding on Jerry's argument that Gloria dissipated marital assets when she allowed it to be foreclosed. However, the judge found that Jerry dissipated marital assets when he purchased and maintained the Maude Street property and when he received his pension. The judge also found that Gloria did not dissipate her severance pay and stock benefits because she used the money to support her family. The judge awarded Gloria one half of Jerry's pension. Also, the judge ordered Jerry to pay Gloria's attorney fees of $9,106 finding that Gloria was financially unable to pay the fees and that Jerry was able to pay them.

A judgment for dissolution of marriage was entered on December 18, 1991, and after Jerry's motion to reconsider was denied, he filed a timely notice of appeal.

OPINION

Jerry raises several arguments challenging the trial judge's division of the marital property.

In a dissolution action, a trial judge has broad discretion in dividing marital property. (*In re Marriage of Hazel* (1991), 219 Ill. App. 3d 920, 579 N.E.2d 1265.) A division of property must be reasonable and must meet the statute's objective, which is to recognize and compensate each party for his or her contribution to the marriage and to place each party in a position to begin anew. (*In re Marriage of Agazim* (1988), 176 Ill. App. 3d 225, 530 N.E.2d 1110.) The court must divide the marital property in just proportions without regard to marital misconduct. Ill. Rev. Stat. 1991, ch. 40, par. 503(d).

The judge's decision will not be reversed on appeal absent an abuse of discretion. (*Hazel*, 219 Ill. App. 3d 920, 579 N.E.2d 1265.) The issue on appeal is not whether the reviewing court agrees with

the property division (*In re Marriage of Pittman* (1991), 212 Ill. App. 3d 99, 569 N.E.2d 1278), but rather, whether no reasonable person would take the view adopted by the trial judge (*In re Marriage of Morrical* (1991), 216 Ill. App. 3d 643, 576 N.E.2d 465).

Initially, Jerry argues that Gloria dissipated marital assets when she failed to pay the mortgage on the marital home which resulted in foreclosure.

Dissipation is the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown. (*In re Marriage of O'Neill* (1990), 138 Ill. 2d 487, 563 N.E.2d 494.) Whether a spouse dissipated assets is dependent on the facts of the particular case. *In re Marriage of Aslaksen* (1986), 148 Ill. App. 3d 784, 500 N.E.2d 91.

For this argument, Jerry relies on the premise that Gloria was financially able to pay the mortgage on the property after he stopped making the payments. In the two cases that Jerry relies on (*In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710, 463 N.E.2d 773; *Aslaksen*, 148 Ill. App. 3d 784, 500 N.E.2d 91), the courts found that a spouse's failure to pay the mortgage on marital property amounted to dissipation when the spouse had the financial ability to prevent foreclosure.

■ Here, however, unlike *Siegel* and *Aslaksen*, there was evidence that Gloria was not earning enough money to pay the mortgage. Although the mortgage payment was only $116 per month in 1986 and she was earning $20,000 per year, she lost her job that year and collected unemployment compensation. At the time, she was supporting at least one child who was still a minor. When she borrowed $14,997 to save the house from foreclosure in 1987, the loan payment was $375 but she did not obtain employment again until 1988. She also testified that she did not receive the remaining balance of the loan after the lender paid off the mortgage, back taxes, and water bill. Her yearly income in 1990, when she stopped paying the mortgage, was only $11,713. Under the circumstances, Gloria was not in a financial position to prevent the foreclosure and, as a result, the trial judge did not abuse her discretion when she did not find that Gloria dissipated marital assets.

Jerry also argues that the trial judge abused her discretion when she awarded Gloria half of Jerry's undivided one-half interest in the Maude Street property.

Jerry contends that the trial judge disregarded section 503(d)(1) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat.

1991, ch. 40, par. 503(d)(1)), which requires the judge, when dividing marital property, to consider "the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit." He notes that the property was purchased and maintained without contribution from Gloria, the property greatly appreciated in value, he and Gloria had approximately equal incomes, and he would suffer tax consequences if the property was sold. He relies on *Agazim* (176 Ill. App. 3d 225, 530 N.E.2d 1110), where the appellate court found that the trial court did not abuse its discretion when it did not grant the husband any share of his wife's interest in an apartment complex because there was no evidence that the husband made a substantial contribution to the property.

■ Although the evidence here showed that Gloria did not contribute to the Maude Street property, it also supports the judge's finding that Jerry dissipated marital assets when he purchased and maintained the property. Because marital assets were used to purchase the property, it was not an abuse of discretion to allow Gloria to share in the appreciation. Also, although Jerry argues that their incomes were approximately equal, his income was actually about twice as much as Gloria's. Gloria testified that her income in 1990 was $11,713. Jerry testified that he received $1,327 per month in pension benefits ($15,924 per year), he earned about $80 per week driving a cab ($4,160 per year), and he received $200 per month in rent ($2,400 per year), which amounts to an annual income of $22,484. Moreover, Jerry's argument that the judge did not consider the tax consequences is without merit. Although the judge must consider the tax consequences when dividing the marital property (Ill. Rev. Stat. 1991, ch. 40, par. 503(d)(11)), the judge cannot consider the tax consequences of actions which are not necessary as a result of the judgment entered (*In re Marriage of Emken* (1981), 86 Ill. 2d 164, 427 N.E.2d 125). Here, the trial judge did not order a sale of the property in the judgment and, therefore, was not required to consider the tax consequences of a sale. Also, Jerry did not present evidence of any tax consequences which was his burden. (See *In re Marriage of Smith* (1987), 162 Ill. App. 3d 792, 516 N.E.2d 777.) As a result, the trial judge did not abuse her discretion in awarding Gloria half of Jerry's one-half interest in the Maude Street property.

In another argument concerning the Maude Street property, Jerry contends that the trial judge erred in awarding Gloria half of the one-half interest he would receive if the probate court finds that he suc-

ceeded to Davis' interest in the property as the surviving joint tenant. He contends that he would acquire that interest by legacy or descent, which is nonmarital property under section 503(a)(1) (Ill. Rev. Stat. 1991, ch. 40, par. 503(a)(1)).

■ Although technically Jerry would not receive that interest by legacy or descent, if the joint tenancy was not severed, he would succeed to Davis' share as the surviving joint tenant as a result of her death. This situation is sufficiently analogous to the legacy or descent exception found in section 503(a)(1) to justify a finding that the interest was nonmarital property. The undivided one-half interest that Jerry would receive as the survivor of the joint tenancy, therefore, is nonmarital property which must be awarded to him. (See Ill. Rev. Stat. 1991, ch. 40, par. 503(d) (each spouse shall be awarded his or her nonmarital property).) As a result, the trial judge's decision on this issue is reversed and the case will be remanded for proceedings consistent with our finding that the interest Jerry would receive as the surviving joint tenant, if the probate court finds that the joint tenancy was not severed, is nonmarital property.

Jerry also maintains that the trial judge abused her discretion when she awarded Gloria half of Jerry's pension when he was employed before they were married.

Retirement benefits earned during the marriage are considered marital property. (*In re Marriage of Davis* (1991), 215 Ill. App. 3d 763, 576 N.E.2d 44.) When a marriage is dissolved, the marital portion of a pension is calculated by the ratio of years the pension accumulated during the marriage to the total years the pension accumulated and should be divided between the spouses. *Davis*, 215 Ill. App. 3d 763, 576 N.E.2d 44.

■ In this case, Jerry contends that the trial judge abused her discretion because she did not award him the nonmarital portion of his pension for the approximately three years the pension accumulated before he was married. However, the judge specifically found that the pension would be divided equally because Jerry alone received benefits from the pension for approximately two years which offset the years that the pension accumulated before he was married. Further, Jerry contends that the judge did not consider Gloria's pension, but Gloria will not receive the pension until she is 65 years old and it is only $200 per month. Under these circumstances, the decision concerning the pension benefits was reasonable and was not an abuse of discretion.

Finally, Jerry contends that the trial judge abused her discretion when she required Jerry to pay Gloria's attorney fees.

Under section 508(a), the court may order one spouse to pay the other spouse's attorney fees after considering their financial resources. (Ill. Rev. Stat. 1991, ch. 40, par. 508(a).) An award of attorney fees is proper if the court finds that one spouse is financially able to pay the attorney fees of the other spouse who is financially unable to pay. (*In re Marriage of Einhorn* (1988), 178 Ill. App. 3d 212, 533 N.E.2d 29.) An award of attorney fees will not be reversed on appeal absent an abuse of discretion. *Einhorn*, 178 Ill. App. 3d 212, 533 N.E.2d 29.

■ Jerry does not challenge the amount of the attorney fees awarded to Gloria; he argues that the award of attorney fees was improper because he did not lie in his pleadings or in his testimony, as the trial judge found, and because Gloria dissipated assets. These arguments are not relevant to the issue here. The only issue is whether the trial judge abused her discretion when she found that Jerry was financially able to pay the fees and Gloria was financially unable to pay them. He contends that Gloria could pay her own attorney fees; however, as stated previously, Gloria was earning $11,713 per year, which was about half of Jerry's income. Jerry, who was only working one or two nights a week, had the discretion to work more to earn a higher income. Further, the property division was essentially equal: they each received half of Jerry's one-half interest in the Maude Street property and half of Jerry's pension. Although Gloria was awarded the marital home, there was no evidence that it could still be redeemed from foreclosure and if it could be redeemed, Gloria was responsible for the foreclosure amount and deficiency. Based on the financial resources of the parties, it was reasonable for the judge to find that Gloria was financially unable to pay her attorney fees and that Jerry was able to pay the fees.

Affirmed in part; reversed in part and remanded for further proceedings consistent with this opinion.

CAHILL, P.J., and JOHNSON, J., concur.