*In re* MARRIAGE OF MARYSE CHARLES, Petitioner-Appellant, and FRANTZ CHARLES, Respondent-Appellee.

Fourth District    No. 4—95—0813

Opinion filed October 24, 1996.

STEIGMANN, J., specially concurring.

Diana N. Cherry, of Metnick, Wise, Cherry & Frazier, of Springfield, for appellant.

No brief filed for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:
In March 1994, the trial court entered a judgment dissolving the 19-year marriage of petitioner, Maryse Charles, and respondent, Frantz Charles, and reserving all other issues. In December 1994, the court entered a supplemental judgment, allocating marital assets and debts and ordering Frantz to pay $2,250 per month in child support. In September 1995, the court entered a judgment which, in relevant part, awarded Maryse $2,750 per month in maintenance, reviewable after three years.

Maryse appeals, arguing that the trial court erred (1) in allocating marital assets and debts because the court (a) did not consider Frantz's dissipation of marital assets, (b) did not consider the parties' grossly disparate earning abilities; and (c) ordered that liquidated marital assets be used to pay Frantz's 1994 tax liability; (2) by ordering that liquidated marital assets be used to satisfy Frantz's attorney fees; (3) in awarding child support that was substantially below the statutory guidelines; and (4) in awarding maintenance that is inadequate to enable Maryse to enjoy a lifestyle consistent with the lifestyle she had enjoyed during the marriage. We reverse and remand.

■ Preliminarily, we point out that Frantz did not file a brief on appeal. In *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976), the supreme court held that where the record is simple and the claimed errors are such that the reviewing court can easily decide them without the aid of the appellee's brief, the court should decide the merits of the appeal. However, a reviewing court should not be compelled to serve as appellee's advocate. Where the issues on appeal cannot be easily evaluated, the appellant's brief makes a *prima facie* showing of reversible error, and the record supports the allegations of error, a reviewing court may reverse. *Talandis*, 63 Ill. 2d at 133, 345 N.E.2d at 495.

Deference should be given to the work of the trial judge, and in the interest of judicial economy we are reluctant to reverse without giving consideration to the merits. See *Daley v. Jack's Tivoli Liquor Lounge, Inc.*, 118 Ill. App. 2d 264, 273-75, 254 N.E.2d 814, 818-19 (1969) (cited as instructive in *Talandis*, 63 Ill. 2d at 131, 345 N.E.2d at 494). The record in this case is not so complicated as to prevent this court from reviewing the issues on the merits. We will consider the merits of the appeal.

Only those facts necessary to an understanding of this disposition will be discussed. As to the issues raised on appeal, the standard of review is whether the trial court's findings of fact are against the manifest weight of the evidence or whether the property distribution or awards of maintenance, child support, and attorney fees amounted to an abuse of discretion. *In re Marriage of Swanson*, 275 Ill. App. 3d 519, 528, 656 N.E.2d 215, 222 (1995) (property distribution); *In re Marriage of Frey*, 258 Ill. App. 3d 442, 448, 630 N.E.2d 466, 471 (1994) (property distribution including dissipation of assets); *In re Marriage of Parker*, 252 Ill. App. 3d 1015, 1022, 625 N.E.2d 237, 242 (1993) (attorney fees); *In re Marriage of Harlow*, 251 Ill. App. 3d 152, 156, 621 N.E.2d 929, 933 (1993) (maintenance); *In re Marriage of Tietz*, 238 Ill. App. 3d 965, 978, 605 N.E.2d 670, 680 (1992) (child support).

The first issue is whether the trial court's allocation of marital assets and debts was an abuse of discretion because the trial court did not appropriately consider Frantz's dissipation of marital assets. Maryse filed a petition for legal separation on June 4, 1991. An order was entered on July 29, 1991, granting her temporary custody, child support, maintenance, and use and possession of the marital residence and a 1990 Audi. She filed a petition for dissolution of marriage on March 6, 1992. At that time, the proceedings were consolidated.

The trial court first ordered that marital debts be satisfied from

the marital estate. These debts ($344,476.42 plus any penalty from the early withdrawal of tax-sheltered investments) included several years of tax liabilities, Frantz's 1994 estimated federal income tax, and payments of attorney fees for both parties. After debt satisfaction, the trial court awarded Maryse $49,000 in personal property she had taken to Florida. Frantz was awarded two homes and the debts thereon, a 1991 Nissan Pathfinder and the debt thereon, and his medical practice. The trial court's orders contain no findings as to the values of the assets awarded to Frantz.

■ Maryse's first issue concerns dissipation of marital assets by Frantz. Dissipation is a factor the trial court should consider in allocating marital property. *In re Marriage of Lee*, 246 Ill. App. 3d 628, 633, 615 N.E.2d 1314, 1319 (1993). Dissipation refers to the " 'use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time that the marriage is undergoing an irreconcilable breakdown.' " *In re Marriage of O'Neill*, 138 Ill. 2d 487, 497, 563 N.E.2d 494, 498-99 (1990), quoting *In re Marriage of Petrovich*, 154 Ill. App. 3d 881, 886, 507 N.E.2d 207, 210 (1987). Whether a given course of conduct constitutes dissipation within the meaning of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503(d)(2) (West 1992)) depends upon the facts of the particular case. *Lee*, 246 Ill. App. 3d at 633, 615 N.E.2d at 1319. The spouse charged with dissipation has the burden of proving, by clear and convincing evidence, how the marital funds were spent. Based on the credibility of the witnesses, the trial court determines whether the funds were spent for legitimate family expenses which were necessary and appropriate. *Tietz*, 238 Ill. App. 3d at 983-84, 605 N.E.2d at 683.

The orders of the trial court in this case do not address the question of dissipation of assets. No finding was made regarding whether there was dissipation. Nor do the trial court's orders indicate when the marriage began undergoing an irreconcilable breakdown. Maryse argues this began when Frantz began his extramarital relationship. The record indicates that Frantz gave money to and purchased trips and other items for his mistress beginning in September 1990 and continuing for some time during these proceedings. This was acknowledged by Frantz. There was testimony from certified public accountant Robert Disbrow and from Frantz from which the trial court could find that Frantz spent several tens of thousands of dollars on this woman, including credit card payments, cash, a house down payment, and mortgage payments. He was also paying her child support for their child. Maryse points to evidence showing Frantz spent in excess of $116,000 with respect to the extramarital

relationship. Frantz purchased a second home for himself after the parties separated. For this second home, he made a downpayment of $11,000 and secured a $175,000 mortgage. From April 1993 through November 1993, he made monthly mortgage payments of $1,500. He also purchased furniture for himself. While Maryse testified that Frantz had removed several valuable household items from the marital home when the parties initially separated, there was no evidence of the value of these assets. Nor was there evidence of the value of the personal property Maryse sold to pay for her move to Florida.

■ In *In re Marriage of Hagshenas*, 234 Ill. App. 3d 178, 197, 600 N.E.2d 437, 451 (1992), the court addressed the issue of dissipation through excessive expenditures for living expenses and wrote the following:

> "It is entirely within the realm of possibility that one spouse's use of marital funds for his or her own living expenses at a time when the marriage is undergoing an irreconcilable breakdown could be shown to be so selfish and excessive and improper as to constitute an outright waste of marital funds."

On the record before us, there was dissipation of marital assets by Frantz. Furthermore, between May 1991 and April 1993, the evidence shows Frantz liquidated investments. Maryse argues this amount exceeds $210,000. As the party charged with dissipation, Frantz had the burden to establish by clear and convincing evidence the disposition of these funds. The failure of the trial court to address the question of dissipation amounted to an abuse of discretion requiring reversal.

The record also supports a finding that Frantz dissipated marital funds when he failed to satisfy the 1991 tax debt, thereby incurring over $26,000 in interest and penalties. Although the 1991 federal income tax return was filed jointly, Maryse testified that Frantz controlled the family finances and she did not see the 1991 tax return before Frantz filed it. Frantz presented no evidence that Maryse had seen or signed the return, nor did he offer a reason for failing to satisfy the tax debt. In addition, the trial court could find that Frantz dissipated marital funds relating to the filing of income tax returns for 1992 and 1993.

Upon remand, the trial court should reconsider the distribution of marital assets and liabilities in light of the dissipation of marital assets by Frantz. Because this judgment is reversed, the remaining issues will be discussed to provide further guidance to the trial court on remand.

■ When Maryse and Frantz married in 1974, Maryse abandoned her medical studies. Although she subsequently acquired a bachelor's

degree in chemistry in 1993, she had not worked outside the home for a number of years and remained the primary caregiver for their two children. During their marriage, Frantz established a profitable medical practice. During the first six months of 1995, his net business income was $116,577. There is evidence Frantz has substantial future earning ability. The trial court committed an abuse of discretion by awarding Frantz, after debt satisfaction, the bulk of the marital assets. It is likely Frantz will be awarded the medical practice. The trial court should award Maryse other marital property as an offset or order Frantz to make payments to her. See *Tietz*, 238 Ill. App. 3d at 969-70, 605 N.E.2d at 674; *In re Marriage of Scafuri*, 203 Ill. App. 3d 385, 389, 561 N.E.2d 402, 405 (1990).

At the August 21, 1995, hearing, the trial judge explained that it appeared to him the parties had more debts than assets, and although the medical practice was a high income producer, he was going to consider the debt-asset relationship in the award of maintenance. Courts have observed that, after a dissolution of marriage, there may not be sufficient funds to maintain both parties in the standard of living they previously enjoyed. However, one party should not be allowed to continue in that standard of living while the other party is forced to substantially reduce her standard of living. This principle applies whether the court is considering property distribution, dissipation of assets, or maintenance.

In reconsidering the distribution of marital property on remand, the trial court must also consider the parties' grossly disparate earning abilities in determining an equitable distribution. Section 503(d) of the Act sets forth the factors to be used by the trial court to divide the marital property in just proportions. 750 ILCS 5/503(d) (West 1992). When it is necessary to award large or income-producing assets to one spouse, the court may achieve an equitable distribution by authorizing offsetting payments to the other spouse. *Swanson*, 275 Ill. App. 3d at 528, 656 N.E.2d at 222.

■ It also appears the trial court erred in allocating marital assets and debts because the court ordered that marital assets be used to satisfy Frantz's estimated 1994 tax liability of $108,321, even though the court entered the dissolution judgment in March 1994. Since the parties' marriage was dissolved in March 1994, it is clear that a portion of Frantz's income for 1994 is marital property which must be considered in the distribution of marital assets. Since no final judgment of legal separation was entered in this case, section 503(a)(3) of the Act is not invoked. 750 ILCS 5/503(a)(3) (West 1992). However, the tax liability on only that portion of Frantz's 1994 income which was earned prior to the dissolution of marriage is a

marital liability. The fact that the parties were living separately does not change the marital nature of the income of either party, nor does it change the marital nature of the income tax liability on that income, although the incurring of penalties and interest by one party may be deemed dissipation of assets. On remand, the trial court must make a determination as to how much of Frantz's 1994 income, and, therefore, how much of the 1994 tax liability, is included in the marital estate and may allocate these assets and liabilities to the parties.

The trial court ordered that marital assets be used to satisfy Maryse's 1994 income tax liability. Her income consisted only of the maintenance she received during 1994, which did not represent the acquisition of a separate marital asset. The Internal Revenue Code of 1939 allows one spouse to deduct payments of separate maintenance to the extent those payments are includable in the gross income of the recipient spouse, provided a joint return is not filed. See 26 U.S.C. §§ 71, 215 (1994). However, this does not control the determination of whether the income is a marital asset or the resultant liability is a marital liability under state law. It would not be an abuse of discretion for the trial court to order each party to pay his or her own income tax liability after separation in light of the disparity in income to each. Nor would it be an abuse of discretion to have the liabilities paid from the marital estate to the extent the incomes of each party are substantially equivalent. However, when the income and tax liability of one party far exceed the income and tax liability of the other party, it may be an abuse of discretion to order payment of both parties' income taxes out of the marital funds because this inadvertently penalizes the party with the lower income. Here, the parties should have been ordered to pay his or her own 1994 federal income tax liability.

■ Concerning attorney fees, the trial court erred by ordering that liquidated marital assets be used to pay Frantz's attorney fees. This, in effect, required that Maryse contribute to Frantz's attorney fees. Under section 508(a)(1) of the Act, the trial court may order a party to pay all or part of the other party's attorney fees and costs incurred in maintaining an action under the Act. 750 ILCS 5/508(a)(1) (West 1992). However, the party seeking attorney fees must show an inability to pay the fees and an ability of the other spouse to pay the fees. *In re Marriage of Riech*, 208 Ill. App. 3d 301, 312, 566 N.E.2d 826, 832 (1991).

The record does establish that Frantz is able to pay his attorney fees.

■ As to the award of child support, section 505(a) of the Act (750 ILCS 5/505(a) (West 1992)) creates a rebuttable presumption that a

specified percentage of a noncustodial parent's income represents an appropriate child support award. *In re Marriage of Freesen*, 275 Ill. App. 3d 97, 105, 655 N.E.2d 1144, 1150 (1995). Section 505(a)(1) of the Act provides that, in the case of two children, the minimum amount of child support that the trial court should order is 25% of the noncustodial parent's net income. 750 ILCS 5/505(a)(1) (West 1992). The court may award less child support if, after considering all relevant statutory factors, it finds a reason for deviating from the guidelines. 750 ILCS 5/505(a)(2) (West 1992). When determining whether to deviate from the statutory guidelines, a trial court's consideration of the factors set forth in section 505 of the Act is mandatory, not directory. *Freesen*, 275 Ill. App. 3d at 105, 655 N.E.2d at 1150. In addition, the trial court must make express findings when it orders child support that is below the statutory minimum. *In re Marriage of Morgan*, 219 Ill. App. 3d 973, 974, 579 N.E.2d 1214, 1215 (1991). In determining the child support obligation of a high-income parent, the court must balance competing concerns. *Lee*, 246 Ill. App. 3d at 643, 615 N.E.2d at 1326. On one hand, child support awards are not intended to be windfalls. *Lee*, 246 Ill. App. 3d at 644, 615 N.E.2d at 1326. On the other hand, the court *must* consider the standard of living the children would have enjoyed absent parental separation and dissolution. *Lee*, 246 Ill. App. 3d at 643-44, 615 N.E.2d at 1326.

During the parties' marriage, the children enjoyed an affluent lifestyle, including trips, parochial school, piano lessons, and restaurant meals. In awarding child support in this case, the trial court specifically found that Frantz is financially able to pay child support but failed to give any reason for its downward deviation from the statutory guidelines. The failure to explain the deviation alone warrants reversal.

■ For the purpose of calculating child support, the supporting parent's net income, as defined in section 505(a)(3) of the Act, must be calculated. 750 ILCS 5/505(a)(3) (West 1992). Although, in calculating net income, federal and state income taxes are deducted, we conclude the penalties and interest incurred for the late payment and nonpayment of such taxes are not deductible in arriving at a supporting parent's net income under the Act. The record does show that Frantz is financially able to pay child support (in 1992, Frantz earned $225,820; in 1993, more than $258,000; and in 1994, more than $292,000).

Prior to the trial court in this case setting the child support award, all of the factors enumerated in section 505(a)(3) of the Act should be considered in determining net income.

■ Finally, we consider whether the trial court committed an

abuse of discretion by awarding Maryse $2,750 per month in maintenance reviewable after three years. Once a trial court determines that a maintenance award is appropriate under section 504(a) of the Act, the court must consider relevant statutory factors to determine the amount and duration of the award. 750 ILCS 5/504(a) (West 1992). Those factors include the resources of the party seeking maintenance (including apportioned marital property), the standard of living established during the marriage and its duration, and the financial ability of the party from whom maintenance is being sought to meet his needs as well as meeting those of his former spouse. 750 ILCS 5/504(a) (West 1992).

In determining the amount and duration of maintenance, the trial court must balance the realistic ability of the spouse to support herself in some approximation of the standard of living enjoyed during the marriage against a goal of financial independence. *Harlow*, 251 Ill. App. 3d at 158, 621 N.E.2d at 934. In addition, when former spouses have grossly disparate earning potentials, the goal of financial independence may not be achievable because of the dependent former spouse's inability to maintain the standard of living shared during the marriage. *Harlow*, 251 Ill. App. 3d at 159, 621 N.E.2d at 935.

Although Maryse testified she planned to attend graduate school, there was no evidence she had applied, been accepted, or what course of study she would take.

In the present case, the parties have grossly disparate earning potentials. Frantz has substantial income and future earning ability, fostered by the award of his medical practice. He testified his net business income for 1994 was $292,940. In addition, there had been testimony in this case relating to interest and dividend income, although no mention of that was made at the hearing on maintenance. Frantz is able to meet not only his needs but those of Maryse. Maryse, the children, and her sister lived in her mother's home. Although Maryse had obtained a bachelor's degree in chemistry, she had not yet completed an internship and did not have a job. In addition, she was the primary caregiver to the parties' children. During the marriage, Frantz and Maryse enjoyed an affluent lifestyle. Maryse's realistic ability to support herself in some approximation of the standard of living enjoyed during the marriage is minimal. The trial court expressly found that the parties had "an opulent style of life" and lived beyond their means. We recognize the trial court in this case made every effort to be fair and that Maryse's proof on maintenance was somewhat less than adequate. She projected a "rent" of $1,500 per month based on what she thought it would cost to obtain a house

in Florida. As it appears Frantz was paying $1,500 per month on his mortgage for his new house, that does not appear to be unrealistic. In addition, she projected utility bills ($225) based on what her mother was paying. Maryse's most recent financial affidavit concluded she required $6,982.67 for monthly living expenses. There is a significant difference between her expenses and the maintenance to be paid by Frantz. The award of maintenance in this case was inadequate. Because this case is remanded for reconsideration of property distribution, there must also be reconsideration of the amount of maintenance and whether permanent maintenance for Maryse would be appropriate.

The judgment of the circuit court of Macon County is reversed. The cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

GARMAN, J., concurs.

JUSTICE STEIGMANN, specially concurring:
Although I do not disagree with the majority's decision to reverse or anything it says in reaching that decision, I disagree that it should be saying any of this in the first place. The majority claims to be giving deference to *Talandis*, which held that, in the absence of an appellee's brief, a reviewing court should reverse (1) if the appellant's brief demonstrates *prima facie* evidence of reversible error, (2) the record supports the appellant's allegations, and (3) a reviewing court cannot easily evaluate the issues on appeal. *Talandis*, 63 Ill. 2d at 133, 345 N.E.2d at 495. The majority then concludes that "[t]he record in this case is not so complicated as to prevent this court from reviewing the issues on the merits." 284 Ill. App. 3d at 342. I respectfully disagree.

The record in this case is not simple, and the claimed errors are not such that we can easily decide them without the aid of the appellee's brief. The *22-volume record* consists of over 2,500 pages. Further, the scrutiny the majority was required to give this record in order to decide this case and to prepare its carefully detailed opinion belies the majority's assertion regarding the uncomplicated nature of this record.

I agree with the majority that an analysis of the record reveals *prima facie* evidence of reversible error. Maryse's brief clearly supports her challenges to the propriety of the trial court's rulings, with appropriate citations to the record and case authority. Accordingly,

we should take the supreme court at its word in *Talandis*, reverse the trial court's judgment, and remand with directions that the trial court grant Maryse *all* of the relief she requested on appeal. We should do so without ever addressing the merits of the trial court's order.

It is somewhat ironic that part of the explanation the majority provides for its willingness to address this case on the merits is its wish to give deference to the work of the trial judge. See 284 Ill. App. 3d at 342. I suggest that the majority's willingness to decide this case on the merits in the absence of an appellee's brief—which might have addressed some of the majority's concerns regarding the trial court's rulings—runs contrary to the deference the majority claims to show. No trial court likes to get reversed, but it would be far more palatable to be reversed because the appellee simply failed to show up at the appellate court than to be reversed—purportedly on the merits—when no one defended the trial court's rulings in the appellate court. As the majority correctly points out, "a reviewing court should not be compelled to serve as appellee's advocate." 284 Ill. App. 3d at 342. So, if this court does not serve as appellee's advocate, and the appellee elects not to appear himself, then who is supposed to defend the trial court's rulings?

I indicated earlier that I had no disagreement with the majority on the merits, but in so stating I should clarify that this concurrence is based upon the majority's assessment of the record and the trial court's rulings in the absence of anyone appearing in this court to argue that those rulings were correct. Under *Talandis*, we need be satisfied only that the record reveals *prima facie* evidence of reversible error—a standard I think this record clearly shows. Nonetheless, it is at least possible that had the trial court had someone defending its rulings before us, our assessment of some (or even all) of those rulings might have changed. Speaking only for myself, it often happens that I am much more impressed with an appellant's arguments after having read only the appellant's brief than I am after I have also read the appellee's brief.